**Frank GIACOBBI, Plaintiff,**

v.

**Leonard J. BIERMANN, Acting Director, Office of Federal Contract Compliance Programs, United States Department of Labor, Defendant.**

Civ. A. No. 91–1492.

United States District Court,
District of Columbia.

Jan. 7, 1992.

Jack L. Gould, Fairfax, Va., for plaintiff.

John C. Martin, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This case comes before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. For the reasons set forth below, Defendant's motion is granted.

### Background

On October 13, 1987, Plaintiff filed a complaint with the Department of Labor ("DOL") alleging a violation of the Rehabilitation Act of 1973 by his employer, Vinnell Corporation ("Vinnell"). As a government contractor, Vinnell is governed by Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, which prohibits government contractors from discriminating against individuals with handicaps. Section 503 does not provide a private cause of action against the government contractor who discriminates, but rather, states that a person who believes that a government contractor has violated the Act may file a complaint with the DOL. Section 503 directs that the DOL "shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant."

In his complaint to the DOL, Plaintiff stated that he had worked for Vinnell in Riyadh, Saudi Arabia as an English teacher. Plaintiff claimed that he had been repeatedly subjected to homosexual harassment, *i.e.,* unwelcome homosexual advances, by his male supervisor at the jobsite. This repeated harassment, Plaintiff alleged, led Plaintiff to suffer from tremendous stress and eventually stress-related physical ailments. Specifically, Plaintiff suffered neck pain and reduced mobility of the neck.

Plaintiff further submits that his work suffered as a result of the stress-related physical problems that he was experiencing. In response to inquiries regarding his reduced job performance, Plaintiff indicated what he believed to be the source of his physical disabilities. Plaintiff claims that his supervisor threatened him upon learning that Plaintiff had spoken of being the victim of homosexual harassment and that Vinnell took no action to alleviate the harassment or to protect him from his supervisor.

The company physician examined Plaintiff after he became ill and, Plaintiff alleges, verified that Plaintiff's illness was stress-related. Further, the doctor determined that it would not be medically advisable for Plaintiff to continue in the job position that Plaintiff held at that time. He recommended that Plaintiff be given "light duty, *i.e.,* float," a reference to a position as a float instructor. Vinnell did subsequently reassign Plaintiff, but not to a float position. Plaintiff asserts that rather than assign him to a less physically demanding position as the doctor had ordered, Vinnell assigned him to a more demanding position. The new more difficult assignment was allegedly made to retaliate against Plaintiff for having voiced displeasure at the company's unwillingness to accommodate his physical handicap.

Eventually, Plaintiff was "medically terminated" from his job. Vinnell had a company policy of terminating employees who for medical reasons are no longer capable of performing their job. Plaintiff asserts that prior to medically terminating an employee, however, Vinnell would typically return an employee to the United States for 90 days for medical treatment. In

Plaintiff's case, this was not done. Instead, Plaintiff was informed that he was terminated effective May 22, 1987. It was this termination that prompted Plaintiff's October 13, 1987 complaint to the DOL.

On March 22, 1988, the DOL, through the Office of Federal Contract Compliance Programs (OFCCP), which investigates Section 503 claims, informed Plaintiff that his complaint could not be acted upon unless he could show good cause why it was not filed within 180 days of the alleged violation as required by 41 C.F.R. § 60–741.26(a). On June 28, 1988, OFCCP informed Plaintiff that, in fact, good cause did exist and that OFCCP would investigate his claim.

The findings of OFCCP's investigations were reported to Plaintiff on December 23, 1988 in a document entitled "Notification of Results of Investigation" (NORI). DOL concluded that Vinnell was indeed covered by Section 503, that Plaintiff was an "individual with a handicap" as defined by DOL regulations, and that the complaint was filed in a timely manner.

The DOL concluded, however, that there had been no Section 503 violation. The DOL found that Plaintiff was given the option of going back to the United States at Vinnell's expense and had declined, instead choosing to spend his 90–day sick leave period receiving medical treatment in Japan. There was insufficient evidence, according to the DOL, to conclude that Vinnell failed to meet its Section 503 obligations.

Plaintiff, again in a timely manner, requested a review of the DOL's initial determination as provided for in 41 C.F.R. § 60–741.26(g). Specifically, Plaintiff complained that: there had been a lack of reasonable accommodation of Plaintiff's handicap by Vinnell; that there had been a pattern of harassment at Vinnell; that Vinnell had offered to return Plaintiff to the United States upon termination, but at no time offered to return him there for sick leave and medical treatment; and that the NORI did not reflect that there had been any investigation by the DOL of the com-

plaint of retaliation by Vinnell against Plaintiff.

Over two years later, on April 26, 1991, the DOL affirmed its original decision that no enforcement action was warranted in this case. This time, the DOL relayed the following findings to Plaintiff: that there was no indication that medical treatment in the United States would have improved Plaintiff's ability to perform his job; that Vinnell made a good faith effort to accommodate Plaintiff's handicap by assigning him to a less physically demanding position; that the company doctor's recommendation of a "floater" position was a "mere suggestion, not an absolute requirement"; that neither the Plaintiff nor the doctor contemporaneously suggested that any further accommodation was necessary or would even be beneficial; and that Plaintiff's termination was in accordance with company policy. In summary, the DOL again concluded that there was insufficient evidence that there had been a violation of Section 503 of the Rehabilitation Act of 1973.

Plaintiff brings this suit seeking a review of the DOL's actions under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ("APA"). Plaintiff claims that the DOL acted in an arbitrary and capricious manner in handling his complaint. Plaintiff also argues that the DOL failed to follow the statutory language of § 503 of the Rehabilitation Act of 1973 by failing to investigate his complaint promptly. Plaintiff further alleges that the DOL follows what amounts to a *de facto* policy of not thoroughly investigating and following through on complaints filed pursuant to § 503. Finally, Giacobbi argues that the DOL's delay in the investigation of his complaint and its failure to take any enforcement action rises to the level of a violation of due process under the Fifth Amendment.

### Heckler v. Chaney

In order to prevail on a claim under the APA, Plaintiff must get past the hurdle of *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). There is an exception to the general presumption under the APA that agency action is subject to

judicial review. The exception is when the action at issue is one "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Where the issue is committed to the agency's discretion by law, there is no law for a reviewing court to apply. *Chaney* holds that an agency decision not to take enforcement action is presumptively a decision "committed to agency discretion by law," and, therefore, is not subject to judicial review.

The government views the present case as indistinguishable from *Chaney*. The DOL in this case made the determination not to take any enforcement action; such a decision, the government argues, is exclusively within the province of the agency.

Plaintiff argues that this case is different from *Chaney*. Plaintiff states that it is not the decision not to take enforcement action that he asks this Court to review; rather, it is the "arbitrary and capricious" manner in which the investigation was carried out. This argument cannot succeed because the investigation itself, like the final decision whether or not to take enforcement action, is within the "enforcement arena" and therefore, committed to agency discretion. *Cf. Robbins v. Reagan*, 780 F.2d 37 (D.C.Cir.1985) (agency decision whether to close a particular homeless shelter was subject to review; *Chaney* applies only when the agency action is within the "enforcement arena").

■ In order to exercise its enforcement discretion in an informed, reasonable manner, an agency must investigate possible violations, which may warrant enforcement action. Deciding which claims are facially without merit, which claims merit investigation, and the level of investigation desirable, are all enforcement-related decisions. Each requires an assessment of how to spend an agency's limited enforcement resources. This is the type of agency decision which *Chaney* holds is not for a court to second guess. Absent law constraining an agency's discretion in making these decisions, determining the manner in which the agency conducts an investigation is part of the enforcement action committed to agency discretion by law.

■ Thus, to remove this case from the *Chaney* presumption of nonreviewability, Plaintiff must demonstrate that there is law to apply which limits the agency's enforcement discretion. Further, the law identified must limit the agency's discretion in a meaningful manner. In *Center for Auto Safety v. Dole*, 828 F.2d 799 (1987) *vacated on rehrg*, 846 F.2d 1532 (D.C.Cir. 1988), the plaintiff argued that, unlike in *Chaney*, there was law to apply in reviewing an agency's decision not to take enforcement action. The law plaintiff relied upon was a regulation of the agency stating that it would take action if there was a "reasonable possibility" of a safety-related defect. Plaintiff argued that while Congress may have given the agency discretion regarding enforcement, the regulation circumscribed the agency's discretion.

While the panel of the D.C. Circuit initially accepted this argument, it vacated its original decision upon rehearing. The "reasonable possibility" standard, the court ultimately decided, "does not limit the agency's discretion in a way that enables us to conduct a meaningful review of the agency's compliance." *Id.* at 1535. The enforcement decision facing the agency, even in light of the regulation, was whether its resources would be best spent in an enforcement action based on the facts before it. This is the type of decision that *Chaney* holds is exclusively the agency's to make.

### Law to Apply in this Case

■ Plaintiff finds two sources of law to apply in this case. The first is § 503 itself, which states: "The Department [of Labor] shall promptly investigate [complaints filed with it under this section] and shall take such action thereon as the facts and circumstances warrant...." 29 U.S.C. § 793(b). The second law to apply is a DOL regulation which states: "The Department of Labor shall institute prompt investigation of each complaint, and shall be responsible for developing a complete case record." 41 C.F.R. § 60–741.26(e).

Plaintiff argues that the mandatory language ("shall") in these provisions limits

the agency's discretion. The agency retains the discretion as to what, if any, enforcement action it ultimately chooses to take, but it cannot make that decision before performing a prompt investigation. Moreover, Plaintiff implies from the language of the statute and the regulation that the investigation must be reasonable, *i.e.*, that it is possible for an investigation to be so cursory or conducted in such an irresponsible manner that the intent of the statute and the regulation would not have been carried out.

The government reads the statute and the regulation more narrowly, arguing that the only requirement of the agency is that it promptly initiate an investigation. Under the government's interpretation, there are absolutely no standards governing the investigation once undertaken. In fact, the government has argued that the investigation need not be completed in a prompt manner or even within a reasonable time frame; it only needs to have begun promptly.

The Court does not read the statute and regulation in the cramped manner suggested by the government. If "agency action is found not to be reasonably consistent" with the intent of Congress to pursue a general goal, the courts must invalidate an agency action. *Robbins*, 780 F.2d at 45. The agency's reading would allow it promptly to open an investigation file, and then sit on the matter, for years if not

decades, only to close the file and take no action. Surely this is inconsistent with the intent of § 503. The "shall promptly investigate" language provides law to apply not present in *Center for Auto Safety*. Like in that case, the ultimate decision whether to take enforcement action is left to the agency; here, however, there is a prerequisite to the agency's making that decision—an investigation. While the Court acknowledges that the statute does leave the agency considerable discretion to conduct the investigation in the manner it sees as appropriate, the statute does require that an investigation be undertaken promptly, be completed in a reasonable amount of time, and not be so cursory as to be a sham.[1]

### Did DOL Promptly Investigate?

Thus, the Court is left with two factual inquiries. First, was an investigation performed?; and secondly, was it prompt? The Court has little difficulty concluding that, based on the evidence in the record viewed in the light most favorable to Plaintiff, an investigation was performed in his case. The initial findings of the DOL (the NORI dated December 23, 1988) and the findings dated April 26, 1991 (which set forth the results of the DOL's review of the initial findings) both evidence that the DOL did, in fact, investigate this complaint.

 Plaintiff complains, however, that the investigation was not reasonably thor-

---

**1.** In arguing that it is immune from judicial review, the DOL cites *Andrews v. Consolidated Rail Corp.*, 831 F.2d 678 (7th Cir.1987), which Defendant characterizes as "a case virtually identical to the one before this court." *Defendant's Motion to Dismiss* at 10. That case merely held that the DOL's ultimate decision whether to take enforcement action under § 503 is not reviewable: "An examination of section 503 establishes that Congress in enacting the statute neither set substantive priorities nor otherwise limited the Department of Labor's discretion in choosing which claims *to prosecute*." *Andrews*, 831 F.2d at 686 (emphasis added). This Court agrees that the ultimate enforcement decision is solely the agency's to make. This Court also concludes, however, that the agency must make its decision only after it has conducted an investigation. Nothing in the *Andrews* decision is inconsistent with that conclusion.

The government argues that review of whether an investigation took place is inappropriate under the APA. The APA provides for judicial review of "final agency action." 5 U.S.C. § 704. Only the decision whether or not to take enforcement action, argues the government, is the final action of the agency.

The Court disagrees for two reasons. First, since the Court has held that an investigation is a statutory requirement, the decision not to investigate—or to perform an investigation so unreasonable in thoroughness as to be tantamount to not investigating—is "agency action made reviewable by statute". *Id.* Secondly, in this case, the agency has made its final determination not to take enforcement action. The government concedes that this is a "final agency action." Since the Court has held that the enforcement determination must be based on an investigation, as part of the review of the agency decision not to enforce, the Court may review whether it was, in fact, based on an investigation.

ough. There appear to be two bases for Plaintiff's assertion. First, Plaintiff finds inaccuracies in the DOL findings, such as a key misquotation, and what Plaintiff deems to be factually erroneous conclusions. To examine the DOL's findings of fact would amount to a *de novo* review of them. The Plaintiff is not entitled to such a review. That this Court may have reached different conclusions than the DOL did, if the Court had the complaint before it, is irrelevant. This Court's only function is to ascertain whether an investigation did take place. A review of the DOL's findings makes clear that the complaint was investigated. Further, the findings issued by the DOL dispel the argument that the investigation was so cursory or wholly unreasonable that the Court should view it as not having been made.

Secondly, Plaintiff claims that his complaint of retaliation was not investigated at all. It is true that the word "retaliation" does not appear in the DOL findings. It would appear, however, that the gravamen of Plaintiff's retaliation claim was investigated. The NORI appears to conclude that Vinnell was simply following its company policy regarding disabled employees and that there is insufficient evidence to conclude that § 503 had been violated. While the Court agrees with Plaintiff that the particular findings are not set forth clearly and unambiguously and that the NORI is conclusionary, a generous reading leads to the conclusion that the retaliation claim was investigated and found without merit.

Somewhat more clear were the April 26, 1991 findings. Again while the word "retaliation" is not used, the DOL leaves little doubt that it investigated and disbelieved the gravamen of the retaliation claim *i.e.*, that Giacobbi was reassigned to a more physically demanding position and was subjected to harassment following his complaints of physical disability. The DOL found:

> The complainant alleged that, while in the process of completing the new job assignment, his supervisor visited him several times and found fault with his work. It is important to note that Mr. Giacobbi and [the company physician] had ample opportunity to advise the company that the accommodation was insufficient. We have determined, therefore, that although the contractor did not reassign Mr. Giacobbi to the job he preferred (Float Instructor), the company made a satisfactory good faith effort to accommodate him with less demanding duties."

*DOL's April 26, 1991 Findings* at 2. Based on these findings, the Court cannot agree with Plaintiff's conclusion that no investigation of his retaliation complaint was made.[2]

Having concluded that an investigation was performed, the second issue is whether it was prompt. As noted previously, the Court cannot agree that a plain reading of the statute and the regulation supports the government's conclusion that the investigation need only be begun promptly. It must also be completed in a reasonable period of time. Further, the regulations provide that a review of the initial findings are available. While the regulations do not explicitly state that the review must be prompt, the Court will infer from the surrounding statutory and regulatory scheme that there is a requirement

---

2. Plaintiff argues that the findings must address each of the complainant's claims individually. Plaintiff, however, cites no statute or regulation requiring that findings be made. Even if Plaintiff is correct that it is implicit in the statute and regulatory scheme that the DOL is to provide complainant with more than simply the ultimate decision whether to take enforcement action, DOL has met this obligation. What Plaintiff seems to be requesting, however, is a more formal and detailed set of findings than he received. Such findings are not required.

The Court does note that the regulations set forth the contents of the "complete case record", including a summary of the evidence as it relates to each charge, that the DOL is required to develop. 41 C.F.R. § 60–741.26(e). There is no requirement that the DOL send complainant a copy of the case record, only that it maintain one. In a case where the DOL's findings supported a conclusion that no investigation had taken place, the case record might serve to reinforce or undermine that conclusion. In such a case, if the DOL did not voluntarily disclose the contents of the case record, the case record would be discoverable.

that, at a minimum, the review is to be performed within a reasonable period of time.

■ While the Court finds ample evidence in the record to support the claim that the DOL did not meet its legal obligation in that the initial investigation was not prompt and the review was not completed within a reasonable period of time,[3] the Court concludes that, in this case, there is no relief which the Court can provide Plaintiff for such a violation. The Court has found that ultimately an investigation was performed and that the DOL, as it was within its discretion to do, decided that no violation had occurred and that no enforcement action was appropriate. Plaintiff has not demonstrated how he was harmed by the DOL's delay in reaching that conclusion.

Plaintiff does not dispute that he had no private cause of action or alternative avenue of recourse that he could have pursued had he received the agency's decision sooner. Had this suit been brought while the matter was still pending with the agency, the Court could have fashioned injunctive relief ordering the DOL promptly to investigate and resolve the matter.

■ If the Court ordered the DOL to conduct its future investigations promptly, such an order would not provide relief to this Plaintiff. Plaintiff does not have standing to request such relief. Plaintiff has not shown "an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Without such a showing by Plaintiff, the Court cannot exercise its power to fashion a remedy because the Article III constitu-

tional requirement of a live case or controversy is not met. *Id.; see also, Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.") Government noncompliance with the law does not always lead to a remedy. Where an investigation was ultimately conducted and it was legitimately determined that no action would be taken, there is no remedy for the government's failure to comply with the law mandated that the investigation be prompt.

### Abdication of Statutory Responsibilities

The remaining claims can be addressed quickly. Plaintiff asserts that Defendant engages in a pattern and practice of failing to meet its statutory obligation to investigate and act on complaints in a prompt manner. *Chaney* did not purport to decide whether judicial review is available where an agency has "consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4.

■ To support the assertion that there has been such an abdication in the present case, Plaintiff offers not only the lack of promptness in his own case, but the case of a Mr. Bird. Mr. Bird was another employee of Vinnell who filed a complaint with the DOL. His complaint was filed in 1985. While the DOL found a statutory violation in his case and determined that enforcement action was appropriate, to date it has not yet taken any. The DOL asserts that

---

**3.** The initial complaint was filed in October of 1987. It took the DOL fourteen months, until December 1988, to issue its initial findings. The DOL attempts to explain this delay by noting that initially, it appeared that Plaintiff's complaint was not filed in a timely manner. The DOL first notified Plaintiff that it did not believe the complaint was filed within the 180–day period required by regulation (41 C.F.R. § 60–741.-26(a)) on March 22, 1988. DOL does not offer an explanation as to why it took it over five months to reach this conclusion.

More troubling than the fourteen months taken to complete the initial investigation is the fact that the review took another two years to complete. The DOL offers no explanation for this delay, which the Court finds excessive. The final disposition of the complaint filed in October, 1987 was not made by the agency until April of 1991. The DOL cannot seriously contend that the word "prompt" can be used to characterize this process.

there are some novel and complex legal issues in Mr. Bird's case that have been responsible for the delay.

The Court finds it difficult to imagine that the issues in Mr. Bird's case could be so complex as to warrant a six-year delay. Further, the Court notes that it has stayed discovery in this action pending the outcome in this dispositive motion. Thus, it is entirely possible that, were the Court to grant Plaintiff's request for additional discovery, further examples of failures on the part of the DOL to act promptly might be brought forward.

Despite the fact that the Court has been offered enough evidence of statutory noncompliance that further discovery would ordinarily be warranted, it must deny the request in this case. The Court has already ruled that Plaintiff's case was investigated. Thus, he is not an appropriate party to raise a pattern of failure to investigate, even if such a pattern were to exist. *See Sierra Club v. Larson*, 882 F.2d 128, 133 (4th Cir.1989) (that agency conducted a factfinding investigation and drafted recommendations to assure future compliance demonstrates that agency has not abdicated its statutory responsibilities).

Nor can Plaintiff raise a claim for abdication of the statutory duty of promptness. The Court has already addressed his claim of lack of prompt investigation and ruled that the Court can grant Plaintiff no relief for this claim. Thus, even were there a pattern of failure to investigate promptly, Plaintiff has no standing to raise the claim since any relief granted would not redress Plaintiff's claim.

Plaintiff personally has no claim for lack of prompt enforcement. The Court has already ruled that it must respect the agency's ultimate decision that no enforcement action was warranted in Plaintiff's case. Thus, in Plaintiff's case there was no failure to enforce promptly, only a possible failure to investigate promptly. Plaintiff, therefore, cannot raise a claim of abdica-

tion of the agency's statutory duty promptly to enforce.

### Due Process

■ Finally, Plaintiff argues that the agency's treatment of his case was so egregious as to violate the due process clause of the Fifth Amendment. Due process is only implicated, however, when there is a constitutionally protected property or liberty interest at stake. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).[4] Plaintiff has not identified such an interest in this case.

The Court finds that his only protected interest is that created by the statute and the regulations, *i.e.*, the right to a prompt investigation of his complaint and an administrative determination whether enforcement action is warranted. The Court has already addressed these interests and found no deprivation of them for which the Court can provide relief. Therefore, there is no cognizable deprivation of liberty or property and therefore, no constitutional violation.

### Conclusion

The agency's ultimate decision whether or not to take enforcement action on a § 503 complaint is not judicially reviewable (absent an abdication of the agency's statutory obligations) because that decision is left to the agency's discretion by law. Section 503 does mandate the DOL to undertake a prompt investigation of complaints. In this case, an investigation was performed. While it may not have been prompt, there is no relief the Court can provide this Plaintiff for that possible statutory violation. Plaintiff lacks standing to raise any possible abdication by the DOL of its statutory role under § 503 since he received an investigation, the agency deemed no enforcement action necessary in his case, and the Court cannot provide him relief for any lack of promptness under the facts and circumstances of this case. There was no Fifth Amendment violation in this case.

---

**4.** There is no evidence that DOL's actions shock the conscience and therefore rise to the level of a substantive due process violation. Thus, the

Court reads Plaintiff's claim to be that there has been a violation of procedural due process.

**42**

There being no redressable statutory violations in this case, by the accompanying order, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment is granted.