**NAACP, JEFFERSON COUNTY BRANCH, et al., Plaintiffs,**

v.

**U.S. SECRETARY OF LABOR, et al., Defendants,**

and

**U.S. Sugar Corporation, et al., Defendant–Intervenors.**

**Civ. No. 82–2315 (CRR).**

United States District Court, District of Columbia.

Feb. 22, 1994.

Shelley Davis of Farmworker Justice Fund, Inc., Washington, DC, Edward J. Tuddenham of Wiseman, Durst & Tuddenham, Austin, TX, Robert Williams of Florida Rural Legal Services, Immokalee, FL, for plaintiffs.

Michael J. Ryan, Asst. U.S. Atty. together with Eric H. Holder, Jr., U.S. Atty. and John D. Bates, Asst. U.S. Atty., (Thomas S. Williamson, Jr., Sol. of Labor, Charles D. Raymond, Associate Sol. for Employment and Training Legal Services, Harry L. Sheinfeld, Counsel for Litigation, Vincent C. Costantino, Asst. Counsel for Litigation, U.S. Dept. of Labor, Washington, DC, of counsel), for federal defendants.

John M. Simpson, Sally P. Paxton, of Fulbright & Jaworski, Washington, DC, for intervenor-defendants.

## MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

On February 3, 1994, the parties in the above-captioned case appeared before the Court for a hearing on the Federal Defendants' Motion to Dismiss ("Defendants' Motion") and the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds ("Intervenor–Defendants' Motion"). After careful consideration of both Motions, the Plaintiffs' Memorandum in Opposition to Federal Defendants' and Growers' Motions to Dismiss ("Plaintiffs' Opposition"), the Federal Defendants' Reply Memorandum to Plaintiffs' Response to Federal Defendants' Motion to Dismiss ("Defendants' Reply"), the Reply in Support of Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds ("Intervenor–Defendants' Reply"), the oral arguments of counsel at the hearing, the applicable law, and the entire record herein, the Court finds that the Defendants' Motion to Dismiss and the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds must both be denied.

### II. BACKGROUND

As all of the parties would undoubtedly agree, this case has a long and complicated history. Litigation began in 1982 to address concerns raised in connection with the temporary foreign worker program (the "H–2"

or "H–2A" program [1] administered by the Department of Labor (the "Department" or "DOL"). Under this program, farmers are permitted to employ foreign workers on a temporary basis upon certification by the Department of Labor that U.S. workers are unavailable and that the use of foreign workers will not adversely affect the wages and working conditions of similarly employed U.S. workers.

In order to protect against such adverse effect, the Department of Labor has issued a series of regulations designed to govern wages and working conditions. These regulations, as set forth in 20 C.F.R. § 655, have established a special minimum hourly wage rate known as the "adverse effect wage rate" ("AEWR"). The interpretation and application of these regulations, including the Department's piece rate regulations,[2] have been at the heart of this lawsuit since its inception in the early 1980s.

Originally filed in 1982, this case arose as a challenge to DOL's interpretation of the H–2 piece-rate regulation, 20 C.F.R. § 655.207(c) (1983) (superseded), and its application to the payroll practices of a number of West Virginia apple growers. In 1983, the case was converted into a nationwide class action and two more years of administrative and judicial proceedings ensued. Finally, on August 15, 1985, the Court entered a final judgment interpreting § 655.207(c) to mean that H–2 piece-rate employers (1) could not increase their minimum, job-retention productivity requirements above 1977 levels and (2) were required to increase piece rates in proportion to annual increases in the AEWR. The Court's injunction thus ordered the Department to require all applicants for labor certification to conform to these requirements.[3]

In July of 1986, almost a year after the Court entered its August 15, 1985 injunction, the Plaintiffs filed a Motion for Further Relief, alleging that the Department of Labor was out of compliance with the Court's earlier orders because DOL was not applying the proportional increase regulation to Florida sugarcane growers. In its defense, DOL contended that the "task rate" system of payment utilized in the sugar cane industry was not a "piece rate" and was thus not covered by § 655.207(c).[4] Plaintiffs, however, sought a declaration that the piece rate regulations did apply to the sugarcane growers' "task rate" system and an injunction prohibiting DOL from granting labor certification to growers who did not offer proportionally increased piece rates.

On the basis of the limited record before it at that time, the Court concluded in a September 25, 1986 Order that a "factual" dispute existed as to the method of payment used by the sugarcane growers. The Court thus ordered the Department to gather the data necessary to resolve this dispute, specifically directing the Department to promptly:

> gather from all sugar cane growers who have applied for or been awarded temporary labor certification for the 1986–1987 harvest season such information as is nec-

1. As the Defendant–Intervenors note, "the label 'H–2' comes from the subsection of the Immigration and Nationality Act describing the immigration status of temporary foreign agricultural workers. In 1987, pursuant to the Immigration Reform and Control act, the program was redesignated 'H–2A.' *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (1988 Supp. IV)." Intervenor–Defendants' Motion at 2.

2. "Under a piece rate system subject to DOL's regulations, a worker is paid a standardized unit of compensation based on one or more standard units of production which can be established in advance and applied uniformly." Defendants' Motion at 2–3, n. 3.

3. The 1985 judgment provided that its injunctive and declaratory provisions were to remain in effect "unless and until modified, amended, or revoked by valid rulemaking." The Department commenced a rulemaking proceeding in 1986 which resulted in the issuance of a new H–2 piece rate regulation in 1987. The new rule repealed the proportional increase requirement but continued to require that job-retention productivity requirements not be increased above 1977 levels without DOL approval.

4. The Department notes that in contrast to a piece rate system, "under a task rate system, a worker is paid upon a measure of production which is not amenable to being quantified, *i.e.*, where payment may be based on a row of sugar cane that is cut. It normally depends upon the difficulty and complexity levels of the daily task to be performed, such as the type of sugar cane to be cut, the maturity of the cane, etc." Defendants' Motion at 3 n. 3.

essary to determine the growers' method of payment to their workers, how the growers calculate their productivity and piece or task rates, whether such rates are subject to 20 C.F.R. 655.207(c), and if so, whether the piece rates offered and/or paid by those growers comply with the Court's orders and judgment in this case.

*See* September 25, 1986 Order.[5]

By that same Order, the Court also required the Department to notify the sugarcane growers receiving temporary labor certification for that and subsequent harvesting seasons that they might be required to make additional wage payments at some point in the future should it be determined that the growers were using a piece rate system that failed to comply with the requirements of 20 C.F.R. 655.207(c):

Defendants shall promptly advise each sugar cane grower awarded temporary labor certification for the 1986–1987 harvest season or subsequent seasons that such grower may be required to make additional payments to its workers should it be determined that the grower has paid its workers according to a piece rate and such piece rate does not comply with the requirements of 20 C.F.R. 655.207(c). Defendants shall require each sugar cane grower to provide to Defendants a list of the names and addresses of all workers employed by the grower during the 1986–1987 harvest season and all subsequent seasons until this matter is finally resolved.

*See* September 25, 1986 Order.[6]

In response to the Court's 1986 Order, the Department of Labor then commenced its investigation of the task-rate pay system, issuing a draft report in October of 1987. The draft report concluded, *inter alia*, that the task rate system is "not a 'piece rate' in either the commonly accepted sense, or for purposes of Section 655.207(c), as it has neither a standardized unit of production, nor a standardized unit of compensation." *See* Defendant's Motion at 4–5.

Following the issuance of DOL's draft report, both Plaintiffs and sugar cane growers were invited to submit comments on the report. The growers apparently indicated that they had no objections to the report as it appeared in draft form but the Plaintiffs requested additional time for discovery, eventually submitting their comments in the summer of 1992.

During this same period, however, other developments relating to this case were also unfolding. As noted above, in 1987 the Department instituted a new rulemaking proceeding which resulted in the issuance of 20 C.F.R. § 655.202(b)(9). In November of 1989, the Plaintiffs were then granted leave to file a Second Supplemental Complaint challenging DOL's interpretation of this new regulation along with 20 C.F.R. § 655.207(c). Thereafter, in February of 1990, the United States Sugar Corporation ("USSC") and the Sugar Cane Growers Cooperative ("SCGC") of Florida were permitted to intervene in this suit.

The Court also notes that in 1989, another lawsuit relating to the payment practices and contractual obligations of Florida sugarcane growers was filed in Florida state court, *Bygrave, et al. v. Sugar Cane Growers Cooperative, et al.,* No. CL–89–8690–AI (15th Cir.Ct., Palm Beach Co., Fla.). The Plaintiffs in the *Bygrave* action alleged that the defendant sugarcane companies breached their clearance order contracts with workers by failing to pay the Adverse Effect Rate per ton of cane cut. Finding that the clearance order clearly established an 8 ton/day minimum productivity standard, the *Bygrave* Court (Judge Lucy Brown) held that the task rate could not be less than the AEWR per ton. On August 21, 1993 judgment was entered in favor of the *Bygrave* plaintiffs and over $50 million in back wages for the 1987–88 through 1990–91 seasons were awarded. That judgment is now on appeal to the 4th

---

5. The Court then dismissed the Plaintiffs' Motion without prejudice to renewal of the motion following the fact gathering provided for in the Order.

6. The Court's Order also permitted the Plaintiffs to take appropriate discovery in connection with the Department's development of a factual record regarding the payment and productivity practices of the sugar cane growers.

District Court of Appeal of Florida and the money has been placed in escrow.

Finally, and perhaps most importantly for purposes of the instant motions, on November 12, 1993 the Department issued its *Final Report Regarding Methods of Payment in Sugar Cane* ("Final Report") and filed it with the Court. The Department has indicated that in completing the Final Report, DOL considered the comments and submissions of both plaintiffs and the sugar cane growers along with the results of an independent analysis performed by an expert the Department retained. Defendants' Motion to Dismiss at 5. The Report concluded that:

> DOL had acted reasonably in approving the pay systems used for sugar cane workers during the years relevant to this dispute, that there was no disguised piece rate paid to workers that was subject to DOL regulations, and that the growers did not violate either 20 C.F.R. § 655.207(c) or 20 C.F.R. § 655.102(b)(9) (the regulations that superseded § 655.207(c) in 1987).

*Id.* at 5.

Following the issuance of the Department's Final Report, Plaintiffs moved to reopen this case on November 22, 1993, seeking to have the Court review the Department's conclusions. More specifically, Plaintiffs have raised objections to the Department's conclusion that the regulations in question apply only to simple piece rates. Plaintiffs strongly contest the notion they perceive to be embodied in the Departmental Report, namely that "[c]omplex piece rates, like the task rate, are beyond ... [the Department's] purview, and, indeed, beyond all administrative control, since DOL's regulations only apply to hourly rates and 'piece rates'." Plaintiffs' Opposition at 6. Plaintiffs further quarrel with the Final Report's alleged contention that the "8 ton" provision in the sugarcane clearance order does not constitute a productivity standard. *Id.* at 6–7. Lastly, Plaintiffs also claim that the administrative record compiled by the Depart-

ment demonstrates that the growers failed to proportionally increase their wage rates in compliance with the Department's regulations and that they should therefore be required to make restitution to their workers. *Id.* at 7.

Given the contentious history of this case, it is perhaps not surprising that the Federal Defendants and the Intervenor–Defendants both objected to the Plaintiffs' request that the case be reopened following the issuance of the Final Report. Both the Department and the Sugar Cane Growers claimed that the matter should be dismissed on jurisdictional grounds, albeit for different reasons. The Court thus directed the parties to brief the remaining issues presented by this lawsuit, beginning with the jurisdictional questions that are the basis for the instant motions to dismiss filed by the Federal Defendants and the Intervenor–Defendants.

Before turning to the merits of these motions, however, it is also important to briefly examine certain recent developments in the sugar cane industry that relate to some of the issues presented by this case. Perhaps most importantly, prior to the 1992 harvesting season, United States Sugar Corporation and representatives of the farmworkers reached a "labor peace" agreement under which USSC abandoned the task rate system and adopted a per-ton payment system. Under this procedure, workers are to be paid on a per-ton basis, using estimates of tonnage cut with subsequent adjustments made after weighing.[7]

During the 1992–93 season, DOL then conducted wage surveys which resulting in a finding that the "per ton" system constituted the prevailing method of payment in the industry. Defendants' Motion at 6. As such, this piece-rate system became mandatory for all growers seeking H–2A certification for the 1993–94 season.

Moreover, partially in response to this finding, all of the other historic users of

---

7. Plaintiffs agree that there is no dispute as to this new per ton wage system because DOL admits that its piece rate regulations apply to this and Plaintiffs have agreed that the Department is in compliance with those regulations. Plaintiffs' Opposition at 8. Plaintiffs argue, however, that aside from fully disclosing to workers the basis upon which they are now being paid, this tonnage based piece rate with a minimum productivity standard of one ton per hour is *"not* otherwise materially different from the task rate system." *Id.* at 8.

temporary foreign cutters shifted to a system of mechanized harvesting and chose not to seek H–2A workers for the 1993–94 season. The Department thus points out that these changes reduced the number of sugar cane certifications from approximately 10,000 to only around 2,300.

According to the Department, then, "[a]s a practical matter, the sugar cane task rate system has disappeared." *Id.* at 6. This conclusion therefore forms the basis for the Department's claim that this case should be dismissed on the ground that the underlying dispute is now moot. The following discussion thus addresses the Federal Defendants' Motion to Dismiss.[8]

### III. *FEDERAL DEFENDANTS' MOTION TO DISMISS*

The Federal Defendants filed the instant Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that there is no longer a case or controversy and that the action is thus moot. More specifically, the Department contends that "[s]ince the [task rate] payment practices which were the focus of this case are no longer in use, and there is no reasonable expectation that they will return, claims for injunctive relief concerning the Department of Labor's ... treatment of those practices are moot." Defendants' Motion to Dismiss at 2.

In support of this contention, the Department claims that there are currently no sugar cane growers using H–2A workers who utilize the task rate system and the "likelihood that the task rate/piece rate issue will ever arise again in sugar cane ranges from extremely remote to non-existent." Defendants' Motion at 2–3. Moreover, the Department further notes that "the regulation, 20 C.F.R. § 655.207(c), whose interpretation

precipitated this litigation, was superseded in 1987." *Id.* at 3.

The Department then contends that the only other issues remaining in this case relate to potential backpay claims the Plaintiffs might have against the sugar cane growers— claims as to which DOL maintains it is not a party.

With respect to this issue of retroactive relief, DOL specifically argues that the Court lacks the authority to require the Department to impose sanctions against the growers for any past violations, as the exercise of such authority is a prosecutorial enforcement matter committed to agency discretion. As such, the Department argues that "this case must be dismissed as no cognizable claims are presented against DOL." Defendants' Motion at 3.

Simply put, the Department's position is as follows: There is no need for the Court to review the Report as a matter of regulatory interpretation because the "task rate" system is no longer in use, so the case is effectively moot. The only other reason for judicial review relates to the Plaintiffs' claims for backpay and, with respect to this issue, the Court lacks the authority to require the Department to take any enforcement action. As such, DOL argues that judicial review would be a largely futile exercise—for even if the Court were to determine that the Department's conclusions were contrary to law, there would be no significance to this finding (1) because the Department will not likely confront the "task rate" issue again and (2) because DOL cannot be forced to exercise its enforcement powers to address any past violations that might have occurred.

In opposing the Department's Motion, Plaintiffs have argued that the action is not moot. In support of this contention, Plain-

---

8. The Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds is considered thereafter. In its simplest terms, the Sugar Cane Growers' position is that although the case is not moot, the proper forum for resolution of this matter is in the Florida court system where the *Bygrave* litigation is already pending. Essentially, the Intervenor–Defendants argue that this case cannot be maintained against the Department and, since no claims have been asserted against the Growers

directly, there is no need for this Court to consider this matter. During the hearing, counsel therefore repeatedly urged the Court to accept the notion that the Intervenor–Defendants were perfectly willing to litigate this matter, objecting only to what they characterized as Plaintiffs' attempt to "split their cause of action." Plaintiffs, of course, vigorously contest both the Department's claim that the case is now moot and the Intervenor–Defendants' attempt to portray *Bygrave* as an identical case.

tiffs argue that they have a "viable claim for restitution and [that] there is a reasonable expectation that, absent injunctive relief, the sugarcane growers or other employers will again seek to pay by a task system to avoid the requirements of DOL's piece rate regulations." Plaintiffs' Opposition at 9.[9]

After careful consideration of the arguments on both sides, and with special attention to the particular history and circumstances surrounding this case, the Court finds that the Defendants' Motion to Dismiss must be denied because this action is not moot.

### A. *The history of this matter reveals that the Department's Motion to Dismiss must be denied because the case is not moot and the Final Report issued by DOL is now properly subject to judicial review.*[10]

As originally filed, the Plaintiffs' Second Supplemental Complaint sought, *inter alia*, a judicial determination that DOL's interpretation of its piece rate regulations as applied to the sugar cane "task rate" system was unlawful. When first presented with this question, the Court concluded that a factual dispute existed as to the method of payment used in the sugar cane industry and thereby directed the Department to conduct an investigation designed to consider this problem. The Final Report just recently issued by the Department constitutes DOL's findings as to this question. As such, the Department's Report, which was prepared in direct response to this Court's September 25, 1986 Order, should now be subject to judicial review.

More specifically, Plaintiffs originally sought and are still seeking to have the Court "determine whether DOL's explanation of its interpretation of the piece rate

regulation is valid." As this is precisely the purpose for which the Department was ordered to develop the factual record represented by the Final Report in the first place, it is entirely appropriate for the Court to now undertake the review contemplated by all parties at the time the Court first ordered DOL to investigate this matter.

In view of the foregoing, the Court cannot accept the Defendants' contention that recent intervening events have rendered the *entire* case moot. At most, one could argue that the major developments in the sugar cane industry alluded to above may have narrowed the scope of the issues remaining before the Court, yet even the validity of this claim is hotly contested by the parties.

The Department argues that the Final Report has "no present impact or prospective effect" as a result of the "demise of the task rate system." Plaintiffs strongly dispute this characterization of the current state of affairs, arguing that there are no guarantees that this problem will not recur as the Department remains free to certify growers under the same terms should the growers choose to return to the use of the task rate system. Plaintiffs further note that such a scenario is not unlikely and downplay the significance of Defendants' argument that the growers' investment in mechanized harvesting makes this only a remote possibility. In further support of their assessment of the likelihood that this controversy will recur, Plaintiffs also note that emergency certification of temporary workers is reasonably likely in the event of emergency weather conditions or other worker shortages. Plaintiffs' Opposition at 15–16.

Although Plaintiffs argue fairly persuasively, the Court need not at this point determine the full effect of these changes or the exact probability that the task rate system will

---

9. With respect to Plaintiffs' concern that the Department's Final Report will have an impact *outside* of the sugar cane industry, the Court takes note of the Department's "affirmative stipulat[ion] that it does not intend the Report to have impact outside the issues raised in this specific proceeding." Defendants' Motion at 9 n. 8. As such, the Court agrees with the Department that any other complaints Plaintiffs might have about DOL's H–2A programs and regulations should be properly raised in separate suits. The issue as it

pertains to the sugar cane industry, however, remains squarely before the Court.

10. Since the Court finds that the Final Report is properly subject to judicial review and that the case is not moot, there is no need for the Court to address another question also briefed by the parties as to whether or not the Court should vacate the Final Report.

again resurface in the sugar cane industry. The Court is not convinced that the Department is justified in characterizing these changes as the "demise of the task rate system." Yet, even assuming arguendo that the Department is correct, these developments would merely narrow the scope of the controversy, not eliminate the entire underlying dispute as the Defendants contend. In other words, even if the Court were to accept the Department's premise that the sugar cane industry has witnessed the "demise of the task rate system," the Court would still reject the Department's conclusion that the Report is therefore "of no present impact, has no prospective effect, and review of it is precluded."

Defendants' claim that there is no longer any case or controversy thus clearly overstates the point. Irrespective of any present or future problems that may or may not remain in connection with the use of the "task rate" payment system in the sugar cane industry, Plaintiffs' complaint raised a legitimate question as to the validity of this payment practice during the 1986–87 harvesting season. It was in direct response to allegations of this problem that the Court ordered the Department to compile the Report and none of the later "intervening" developments noted by Defendants can be said to have had any impact on the problem as it existed during the 1986–87 season. At a

minimum, then, this issue remains before the Court.[11] The fact that its resolution has had to await the seven year period during which the Final Report was being compiled should not in any way be used to prejudice the rights of the Plaintiffs to seek full and meaningful relief.[12]

Nor is the Court persuaded by Defendants' claim that the Report is unreviewable agency action. Defendants' rely on the D.C. Circuit's opinion in *Industrial Safety Equipment Ass'n, Inc. v. E.P.A.*, 837 F.2d 1115, 1120 (D.C.Cir.1988) for the proposition that an agency report which does not directly " 'impose an obligation, determine a right or liability or fix a legal relationship' is not reviewable agency action ... (quoting *Kukatush Mining Corporation v. SEC*, 309 F.2d 647, 650 (D.C.Cir.1962))." Defendants' Motion at 13. In addressing this claim, however, the Court notes that not only is the impact of the Report in this case far more significant than the Defendants concede, but the D.C. Circuit also noted that there are not necessarily hard and fast rules as to what constitutes reviewable agency action, remarking that "courts have made the threshold determination of reviewable agency action on a case-by-case basis." *Industrial Safety Equipment Ass'n, Inc. v. E.P.A.*, 837 F.2d 1115, 1117 (D.C.Cir.1988). In the instant case, the Departmental Report at issue

11. The Court further notes that this position is shared by the Intervenor–Defendants who stated categorically at the hearing that this case was not moot. Indeed, even the Defendants implicitly concede that there is still a live controversy with respect to the issue of backpay—the Department just maintains that it is not a necessary party to the resolution of this aspect of the case nor can the Court properly prevail upon DOL decision makers to address an issue committed to the Department's prosecutorial discretion.

12. In the interest of justice, the Court finds that questions as to what relief might properly be awarded are best reserved until after a decision on the merits has been rendered. Plaintiffs and the Federal Defendants argue at length over the appropriateness of injunctive relief and the authority of the Court to require the Department to condition future certification on the willingness of future sugar cane grower applicants to provide retroactive relief. The Department argues that such an order would infringe upon DOL's discretion to make enforcement decisions and

Plaintiffs claim that such an order would constitute a valid exercise of the Court's equitable power to grant restitution.

In considering these claims, the Court notes that although such relief might fall outside the scope of judicial review, this possibility should not be used to entirely preclude judicial review of the Report. This is especially true in light of the fact that the Court's Order of September 25, 1986 specifically required the Department to notify those growers who received certification for the 1986–87 season that they might at some point be required to make additional wage payments. As such, it would be premature for the Court to rule on the feasibility of such relief. Moreover, even if the Court were to find that it lacked the authority to order this type of relief, this would not necessarily render judicial review of the Report meaningless. Indeed, the Court hopes that a judicial finding that DOL had acted contrary to law in failing to comply with its own regulations would prompt the Department to reconsider awarding such relief, even absent a court order mandating such action.

is the direct product of a Court-ordered investigation in this very suit and by virtue of that alone is properly subject to judicial review.

Finally, contrary to the Defendants' suggestion, this Court has no intention of issuing an advisory opinion intended to influence the outcome of the *Bygrave* litigation now pending in the Florida court system. Review of the Department's Report was clearly contemplated by this Court and the parties to this suit as early as 1986, long before the litigation in Florida began. As such, the Court cannot accept Defendants' contention that judicial review of the Final Report, undertaken to resolve all remaining issues in this case, would in any way constitute an advisory opinion designed to affect the outcome in *Bygrave*.

In short, the Court must reject the Defendants' contention that this issue is moot. Nor is there merit to the Department's claim that the Final Report is not properly subject to judicial review. For these reasons, the Court declines to grant the Federal Defendants' Motion to Dismiss.

**B.** *This Court is the appropriate forum for resolution of the remaining issues in this case.*

■ The Court also rejects the Defendants' contention that "it would be more efficient to allow the Florida court to resolve these [remaining] issues." Defendants' Motion at 12. This Court has a long history and resultant familiarity with the many issues involved in this case and the Plaintiffs' desire to pursue this cause of action to its final resolution in this forum is entirely understandable.

Moreover, to the extent that Plaintiffs presented valid causes of action in the mid 1980's, this Court intends to respect their rights to have these claims resolved on the merits. The fact that it has taken this many

years to prepare these issues for decision, and the fact that intervening events, including the filing of the *Bygrave* lawsuit, may have changed the nature and scope of some of the remaining issues in this suit, should not prevent the Plaintiffs from having their full day in Court. To hold otherwise would be to deny Plaintiffs their right to a just resolution of their claims.[13] As such, the Court must deny the Federal Defendants' Motion to Dismiss.

The Court shall now turn to address the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds. As the following discussion reveals, the Sugar Cane Growers primarily argue that any issues that remain to be litigated with the Plaintiffs are not properly resolved by this Court, but for many of the same reasons articulated above, the Court does not agree.

**IV.** **INTERVENOR–DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ON JURISDICTIONAL GROUNDS**

The Intervenor–Defendants, while not claiming that this case is moot, argue that the suit ought to be dismissed because the Court lacks subject matter jurisdiction. The sugar cane growers base their claim on the following three grounds:

(i) the agency action for which plaintiffs apparently seek judicial review—DOL's *Final Report*—embodies an exercise of prosecutorial discretion not to take enforcement action and, thus, is unreviewable; (ii) based upon the pleadings allowed to date, plaintiffs do not have standing to sue because their claimed injury cannot be redressed by the remedy they seek against DOL and they have filed no claim against anyone else; and (iii) plaintiffs do not have a cause of action under the Administrative Procedure Act ("APA") for an order com-

---

**13.** The Court refuses to prejudice the Plaintiffs by permitting the Federal Defendants and the Intervenor–Defendants to play off each other in arguing for dismissal of this action. Indeed, there is a certain extent to which the arguments of both sides take on this character. The Federal Defendants urge the Court to find that the case is moot and that the only potential remaining issues are claims for back pay that must be brought directly against the Growers. The Intervenor–Defendants, however, agree with the Plaintiffs that the case is not moot but claim that they ought to be dismissed as Defendants because no direct claims have been brought against them, and the Department cannot be forced to impose sanctions.

pelling the agency to take enforcement action against the growers.

Intervenor–Defendants' Motion at 10–11.

Essentially, the sugar cane growers' position is that "[s]ince *NAACP* cannot be continued against DOL, it cannot be continued at all." The Plaintiffs take issue with this position and, as indicated above, the Court also disagrees with the notion that the Department's Final Report is not subject to judicial review. As such, the Court finds that the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds must be denied.

## A. *The Heckler v. Chaney presumption against judicial review of an agency's decision not to take enforcement action does not preclude judicial review of DOL's Final Report under the circumstances of this case and thus does not require that this cause of action be dismissed on jurisdictional grounds.*

▮ The Intervenor–Defendants first argue that the Court lacks jurisdiction over this case because the agency action that the Plaintiffs are challenging is not judicially reviewable. The Sugar cane growers characterize Plaintiffs' claim as an allegation that DOL failed to enforce its piece rate regulations and as a request that the Court order the Department to undertake appropriate enforcement actions. Citing DOL's determination in its Final Report that the regulations were not violated and that "no remedy is appropriate", the Intervenor–Defendants urge the Court to find that the Department's Report is an "unreviewable exercise of enforcement discretion" under the rule of *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). *See* Intervenor–Defendants' Motion at 11.

In opposing this motion, Plaintiffs claim that the Intervenor–Defendants' "argument misconstrues the nature of the farmworkers' claim and must be rejected." Plaintiffs' Opposition at 19. More specifically, Plaintiffs argue that the case raises a "challenge to DOL misinterpretation of its piece rate regulations ... [an issue] plainly subject to judicial review." Plaintiffs' Opposition at 19.

In arguing their respective positions, the Court notes that both parties devote considerable attention to the law surrounding judicial review of agency action. Yet neither party is really challenging the legal propositions set forth by the other. Plaintiffs do not dispute the notion that enforcement decisions are matters committed to agency discretion. Nor do the Intervenor–Defendants quarrel with the notion that questions of regulatory interpretation are reviewable under the Administrative Procedure Act, 5 U.S.C. Sec. 706. Rather, the primary issue in contention is the appropriate characterization of the agency action embodied in the Department's Final Report: the Intervenor–Defendants urge the Court to find that it is an unreviewable decision not to take any enforcement action and the Plaintiffs claim that it is a straightforward question of regulatory interpretation.

Under the circumstances of this case, the Court cannot accept the Intervenor–Defendants' contention that the Department's Final Report constitutes nothing more than a presumptively unreviewable enforcement decision. As the history of this case makes clear, DOL was directed to compile this Report by this Court's Order of September 25, 1986. Moreover, as the language of that Order suggests, the purpose of directing the Department to develop a factual record was far broader than the Defendant Intervenors would have the Court believe. Unlike those cases in which agencies conduct investigations purely for enforcement purposes, the investigation contemplated by the September 25, 1986 Order was designed to help resolve a factual dispute relating to the proper interpretation of the Department's piece rate regulations as applied to the sugar cane industry's "task rate" system. The fact that the Court's Order also provided for an inquiry into the issue of the sugar cane growers' compliance with the Court's prior orders and judgments in this case did not fundamentally alter the character of the investigation and Report. Nor is the entire Report rendered presumptively unreviewable merely because the Department included in its conclusions a finding that no violations had occurred and

no remedies were appropriate.[14] The history of the case leaves no doubt that the Report constitutes a factual record compiled to assist the Court in resolving the legal claims raised by the Plaintiffs' complaint.

For this reason, many of the cases relied upon by the Intervenor–Defendants in attempting to characterize the Report as a statement of the Department's enforcement decisions are inapplicable. For instance, the "investigation" at issue in *Giacobbi v. Biermann*, 780 F.Supp. 33 (D.D.C.1992), *aff'd*, 1992 WL 309042 (D.C.Cir.1992) was conducted to explore the Plaintiff's claims of discrimination by his employer in violation of the Rehabilitation Act of 1973. The Court's holding that judicial review was limited to the question of whether the Department conducted a prompt investigation is easily differentiated from the instant case. In *Giacobbi*, the Court was being asked to review an investigation addressed solely to the question of a particular violation. The ultimate decision of the agency in that case not to take any enforcement action was not judicially reviewable under the rule of *Heckler v. Chaney*. In this case, however, the Departmental Report Plaintiffs seek to have the Court review encompasses far more than a single agency enforcement decision, and for that reason is properly subject to judicial review.

Indeed, under the circumstances of this case, it would be highly unjust to preclude review merely because the Report contains certain findings that relate to enforcement decisions. This difficulty of characterizing agency action for purposes of judicial review has created a pervasive tension in similar cases where questions of regulatory interpretation seem inextricably linked to matters of enforcement and prosecutorial discretion. The danger to which the Intervenor–Defendants seek to alert the Court concerns the possibility that Plaintiffs will seek to cast an enforcement decision as a question of regulatory interpretation so as to preserve the possibility of judicial review. In the instant

case, however, the Court finds itself presented with the opposite problem. The history of the case makes clear that the Report was *intended* to address the legal question of regulatory interpretation and it would be just as unfair to permit the Department to recast the entire issue as a question of enforcement for purposes of this litigation.

For these reasons, the Sugar cane growers' heavy reliance on the case of *Safe Energy Coalition of Michigan v. U.S. Nuclear Regulatory Commission*, 866 F.2d 1473, 1476 (D.C.Cir.1989) is also misplaced. The Intervenor–Defendants rely upon *Safe Energy* for the proposition that Plaintiffs should not be permitted to "evade the presumption of unreviewability by artificially carving out this antecedent legal issue." *Id.* at 1476. Once again, though, the history of this case makes clear the distinction: the report at issue in *Safe Energy* constituted a written explanation of the agency's decision not to take enforcement action whereas DOL's Final Report was prepared in direct response to a Court Order seeking the development of a factual record upon which to decide the legal question of regulatory interpretation. The Court thus disagrees with the Intervenor–Defendants' claim that the NRC report is "analogous" to DOL's Final Report.

Indeed, it is not the Plaintiffs in this case who are guilty of a post hoc effort to recharacterize the Report under consideration as an issue of regulatory interpretation. The legal question raised by this case has been clear from the beginning and the Court's Order of September 25, 1986 leaves no doubt that the Report was intended to address precisely this legal issue right from the start. As such, the Report differs significantly from the primarily enforcement-related decisions embodied in the Report at issue in *Safe Energy*.

For the foregoing reasons, the Court finds that there is no merit to the Intervenor–Defendants' contention that this matter must

---

14. As indicated above, the Court expresses no opinion at this time as to the question of whether certain aspects of the relief Plaintiffs seek—including an order directing DOL to withhold future certifications from any growers who fail to make restitution—are within the scope of the

Court's authority to award. For the purposes of the present motion, it is sufficient that the Court agrees with the Plaintiffs' position that the inclusion of this request for a particular form of relief does not convert the entire case into a claim for judicial review of a DOL enforcement decision.

be dismissed for lack of jurisdiction on the grounds that it is a presumptively unreviewable enforcement decision.[15]

**B.** ***In view of the history of this litigation, equity demands that the Court not dismiss Plaintiffs' case for lack of standing on the grounds that Plaintiffs' claims cannot be redressed by a favorable decision.***

The Intervenor–Defendants also argue that Plaintiffs have no standing to sue because a key element of standing, redressability, is not present in this case. In opposition, the Plaintiffs claim that the Court can redress their claims "both by enjoining DOL to lawfully interpret its piece rate regulations and by directly ordering the growers before it—USSC and Sugar Cane Growers Cooperative of Florida—to pay restitution to their workers." Plaintiffs' Opposition at 25. In view of the history and circumstances surrounding this case, the Court must also reject the Intervenor–Defendants' argument that Plaintiffs lack standing, as a matter of equity, if nothing else.

■ Once again, the parties are generally in agreement that the law governing standing is set forth in the Supreme Court case of *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992):

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural or hypothetical.'" ... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the

defendant, and not, ... th[e] result [of] the independent action of some third party not before the court." ... Third, it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

■ Moreover, there seems to be general agreement on both sides that the only element of standing as to which a question exists with respect to the facts of this case is the issue of redressability. More specifically, the Intervenor–Defendants allege that the Plaintiffs lack standing "because the harm about which plaintiffs complain—allegedly underpaid wages—cannot be redressed by the relief that plaintiffs have sought against DOL, and no direct claim has been filed against the growers." [16]

The Court, however, cannot in good conscience accept this argument in view of the specific history of this case. The dismissal sought by the Intervenor–Defendants rests largely on a technical argument that would unfairly elevate form over substance to the prejudice of the Plaintiff class. As indicated above, resolution of this case has been delayed for years pending the completion of the Final Report and the Court feels very strongly that justice requires that the pending motions to dismiss be evaluated in light of this litigation's lengthy history. As such, the Court notes that at the time the Department was directed to compile the Final Report, the growers were put on notice that they might someday be required to make backpay awards. Allowing the Plaintiffs to pursue this case on a theory that their injuries may be redressed through an award of backpay can hardly be said to prejudice the Intervenor–Defendants.

More importantly, though, the Court also notes that in 1992 the Plaintiffs sought leave to file a Second Amended Supplemental

---

**15.** As this Opinion makes clear, the Court believes that it is in the interest of justice to reserve judgment on whether specific aspects of the Final Report are immune from judicial review. For purposes of the instant motion, it should suffice to say that the Motion to Dismiss cannot be sustained on the basis of the claim that judicial review of the *entire* Report is precluded.

**16.** In opposition, Plaintiffs argue that "[a]n order declaring that the piece rate regulations apply to 'task rates' and enjoining the Department to withhold certification from any sugarcane grower which fails to comply with those provisions and make restitution to its workers would provide the farmworkers with a significant remedy ... Indeed, the requested declaration is the all important predicate for an order requiring the growers to make restitution to their workers."

Complaint, in part to add direct claims for restitution against the Intervenor–Defendants. As Plaintiffs correctly point out in their opposition, the Court at that time denied the Motion, finding it "unnecessary to the relief already claimed herein by virtue of the pleadings extant." *See* Court's Order of November 30, 1992. Thus, even though the Court takes no position at this time as to what form of relief may be appropriate in this case, it is clear as a matter of equity that the Plaintiffs' case cannot be dismissed for lack of standing.[17]

### C. *The Court must also reject the Intervenor–Defendants' argument that the Plaintiffs have no cause of action under the APA.*

The Intervenor–Defendants' last argument is that the case should be dismissed because the Plaintiffs have an adequate remedy at law directly against the growers in *Bygrave* and thus cannot maintain their cause of action against DOL under the APA. The Plaintiffs again dispute this argument claiming that the action is not seeking judicial oversight of the Department's enforcement decisions but rather asks the Court to address the Plaintiffs' claim that DOL wrongfully interpreted its regulations. Moreover, Plaintiffs point out that they "cannot obtain relief for this injury in *Bygrave* or any other suit directly against the Growers" because they first need a judicial declaration that the Department's interpretation of its regulations is in error.

17. The Court wishes to further emphasize that the foregoing is not intended in any way as a ruling upon the appropriateness of either injunctive or monetary relief. As the rest of this opinion makes clear, these are questions that the Court will resolve, as necessary, after it has had a chance to review the Department's Final Report. The Court's position with respect to this issue is solely that the history of this case precludes a finding that Plaintiffs' claims are *not* redressable and that they therefore lack standing to sue.

18. Indeed, these differences also form the basis for the Court's denial of the Intervenor–Defendants' Motion for Summary Judgment. As the Plaintiff's response to the Intervenor–Defendants' Statement of Facts makes clear, the parties are not in agreement as to the claim that every canecutter member of the class certified in

The Court finds that for all of the reasons already set forth in this Opinion, the Plaintiffs should be permitted to pursue their claim by having the Court now undertake judicial review of the Department's Final Report. There is no need for the Court to address this issue at length again, as the underlying dispute between the parties as to the proper characterization of the posture of this case has already been discussed. The Court shall take this opportunity, however, to point out that despite claims by the Defendants and the Intervenor–Defendants that this suit is the same cause of action as in *Bygrave*, there appear to be significant differences, not the least of which is the Department's presence in this case and the number of seasons covered by each complaint.[18] More importantly, though, if in fact these were identical causes of action as the Intervenor–Defendants would have the Court believe, this is an issue that should have been raised in the Florida case which was filed several years after the initiation of this Court's case. As such, Plaintiffs are now entitled to have the Court complete the process of judicial review set in place years ago and the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds must therefore be denied.[19]

### V. *CONCLUSION*

For all of the foregoing reasons, the Court must deny the pending motions to dismiss. The Final Report issued by the Department

*NAACP* is a member of the *Bygrave* class as well. More specifically, the *Bygrave* class apparently does not include the seed cane cutter who are parties to the instant action. Moreover, the existence of other disputes as to facts upon which the parties base their arguments concerning such issues as the appropriateness of injunctive relief further render an award of summary judgment on jurisdictional grounds inappropriate in this matter.

19. Finally, during the hearing the Court also discussed with counsel the issue of modifying the briefing schedule in this matter. In light of the fact that the Plaintiffs have already waited so many years for resolution of this dispute and the Court's desire to facilitate this process as expeditiously as possible, the Court informed counsel that the previously set briefing schedule would remain in effect.

in response to this Court's Order of September 25, 1986 is finally complete and the Plaintiffs are entitled to a final resolution of their claims. The Court understands the Department's claim that certain changes in the industry's payment practices make some of the Plaintiffs' initial concerns seem less vital just as the Court appreciates the desire of the Intervenor–Defendants to litigate all of these issues in one forum. Under the circumstances of this case, however, the interests of both justice and judicial economy require that the pending motions to dismiss on jurisdictional grounds be denied so that this Court may facilitate the final resolution of this lengthy and complex litigation. The Court shall thus issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### ORDER

Upon consideration of the Federal Defendants' Motion to Dismiss, the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds, the oppositions and replies filed thereto, the lengthy history of this case, the applicable law, the entire record herein, the arguments of counsel articulated during the February 3, 1994 hearing, and for all of the reasons set forth in this Court's Opinion issued of even date herewith, it is, by the Court, this 19 day of February, 1994,

ORDERED that the Federal Defendants' Motion to Dismiss shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Intervenor–Defendants' Motion to Dismiss and for Summary Judgment on Jurisdictional Grounds shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that all of the pending motions to modify the briefing schedule shall be, and hereby are, DENIED, and the parties shall continue to adhere to the deadlines previously set forth in the briefing schedule established by this Court's Order of December 16, 1993.